IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH LAWSON STALLWORTH,
Petitioner,

v. Case No. 3:05cv427/RV/MD

JAMES R. MCDONOUGH,
Respondent.

---

# REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 13). Petitioner has filed a reply. (Doc. 25). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

By information filed December 18, 1997, petitioner was originally charged in the Circuit Court of Escambia County, Florida, case number 97-5264, with the sale, manufacture, or delivery of cocaine, and the possession with intent to sell, manufacture or deliver cocaine, with these crimes alleged to have occurred on

**November 23, 1997. (Doc. 13, ex. L, p. 19).[1] Pursuant to a plea agreement, petitioner tendered a counseled no contest plea on March 4, 1998. (Ex. B, pp. 1, 5; *see also* doc. 1, p. 2). He was sentenced on April 29, 1998 to two consecutive 15-year sentences. (Ex. B, pp. 5, 8-13). Neither sentence was habitualized. The total 30-year sentence was suspended and petitioner was placed on one year of community control followed by four years probation. (*Id.*). No direct appeal was taken. (Ex. B, p. 5).**

**Subsequently, petitioner violated the terms of his probation and, on May 23, 2002, the suspended sentence was lifted and petitioner was sentenced to serve thirty years in prison. (Doc. 1, p. 1; Doc. 13, ex. A-I, pp. 97--103; ex. B, p. 5). Petitioner filed a notice of appeal. (Doc. 13, ex. B, Progress Docket Printout; *see also* www.1dca.org, case number 1D02-2654). Prior to filing his initial brief, petitioner filed in the trial court a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). (Ex. B, Progress Docket Printout; Ex. C, p. 3; Ex. B, pp. 5-6). Petitioner argued that he was originally illegally sentenced to a true split sentence of thirty years, and upon violation of his probation was illegally sentenced to thirty years in prison. (Ex. C, pp. 3-4). The motion was denied on September 24, 2002. (Ex. B, Progress Docket Printout; ex. C, p. 4). In his direct appeal brief, petitioner raised one issue: "The Trial Court Erred in Sentencing Appellant to an Illegal True Split Sentence of Thirty Years," arguing that petitioner's thirty year sentence was illegal because it exceeded the maximum specified by the guidelines. (Ex. C). The Florida First District Court of Appeal ("First DCA") affirmed petitioner's VOP judgment and sentence on May 8, 2003 without written opinion. *Stallworth v. State*, 845 So.2d 191 (Fla. Dist. Ct. App. 2003) (Table) (copy at Ex. E). On April 1, 2004 petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). (Ex. B, pp. 1-4). He raised one issue: That the imposition of consecutive sentences was illegal because both of the drug charges arose out of a single criminal episode, based on the recorded information**

---

**[1]Hereafter all references to exhibits will be to those attached to Doc. 13 unless otherwise noted.**

**listing the offenses as having been committed on the same day. The motion was denied on May 20, 2004. (*Id.*, pp. 5-7). The First DCA affirmed the denial order on September 8, 2004, with the mandate issuing October 13, 2004. *Stallworth v. State*, 884 So.2d 28 (Fla. Dist. Ct. App. 2004) (Table) (copy at Ex. I).**

**On June 13, 2002 petitioner was found guilty by jury verdict of lewd and lascivious battery on a child over 12 but under 16 years of age (statutory rape) in Escambia County Circuit Court case number 01-5542. (Ex. A-I, p. 76; Ex. A-II, p. 157). He was adjudicated guilty and sentenced on August 2, 2002 to fifteen years in prison as an habitual felony offender. (*Id.*, pp. 78-91, 183-87). Petitioner appealed his conviction, raising one claim of trial court error. On March 23, 2004 the First DCA affirmed petitioner's conviction and sentence without written opinion. *Stallworth v. State*, 871 So.2d 215 (Fla. Dist. Ct. App. 2004) (Table) (copy at Ex. H).**

**On June 3, 2004 petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Ex. J, pp. 1-22). He raised four grounds of ineffective assistance of counsel pertaining to both the VOP judgment and the lewd battery judgment. The trial court denied relief on August 24, 2004. (*Id.*, pp. 23-190). The First DCA affirmed the denial order on August 22, 2005, with the mandate issuing October 12, 2005. *Stallworth v. State*, 911 So.2d 1238 (Fla. Dist. Ct. App. 2005) (Table) (copy at Ex. K).**

**On March 10, 2005 petitioner filed a second motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, raising three grounds of ineffective assistance of counsel pertaining to the consecutive sentences resulting from his VOP conviction. (Ex. L, pp. 1-19). The trial court dismissed the motion with prejudice as successive on March 12, 2005. (*Id.*, pp. 20-21). The First DCA affirmed the denial order on June 24, 2005, with the mandate issuing August 12, 2005. *Stallworth v. State*, 907 So.2d 521 (Fla. Dist. Ct. App. 2005) (Table) (copy at Ex. M). Petitioner sought further review in the Florida Supreme Court; however, his petition for review was dismissed for lack of jurisdiction on August 19, 2005. *Stallworth v. State*, 911 So.2d 99 (Fla. 2005) (Table) (copy at Ex. N).**

Petitioner filed the instant federal habeas petition on November 9, 2005. (Doc. 1). He challenges both the VOP judgment and the lewd battery judgment.

## DISCUSSION

Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established

> **Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

**120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).**

**Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either**

**respect to be contrary, the district court must independently consider the merits of the petitioner's claim.**

**If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."** ***Williams,*** **529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.** ***Holland v. Jackson*****, 542 U.S. 647, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam);** ***cf. Bell v. Cone*****, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."** ***Putman v. Head*****, 268 F.3d 1223, 1241 (11th Cir. 2001);** ***see also Carr v. Schofield*****, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting** ***Ramdass v. Angelone*****, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).**

**Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.** ***E.g., Mitchell v. Esparza*****, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . .");** ***Lockyer, supra*****, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to**

**give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").**

**Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).**

**Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).**

**When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).**

______Within this framework, the court will review petitioner's claims.

Petitioner's Grounds for Relief

Ground 1. Denial of constitutional rights during lewd battery trial when trial court limited cross-examination of the victim.

Petitioner claims he was denied his constitutional rights to a fair trial, to due process of law, and to confrontation when the trial court limited cross-examination of the victim. Specifically, petitioner contends that the trial court improperly precluded defense counsel from introducing the victim's statement that she had sex with a particular third person (a 16-year-old white boy named David) during the relevant time period. (Doc. 1, p. 4). Respondent concedes that petitioner properly exhausted this claim by raising the issue on direct appeal.

A. Clearly Established Federal Law - Confrontation Clause

The Sixth Amendment guarantees the criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. At the core of the Confrontation Clause is the right of every defendant to test the credibility of witnesses through cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The Supreme Court has emphasized that cross-examination is more than a desirable rule of trial procedure; rather, it is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. 1105; *see also Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The right to cross-examine is not, however, absolute. *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046. A trial court has discretion to limit the scope of cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *See id.* The right to cross-examine may, "in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046. In this way, the Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination

**that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original).**

**B. Federal Review of State Court Decision**

**On direct appeal, petitioner claimed that the trial court erred in limiting cross-examination of the victim on the point that the victim had previously not only denied having sex with petitioner, but also said she had sex with a specific third person. Petitioner claimed the latter evidence was admissible despite Florida's rape shield statute, and that its exclusion denied him his constitutional rights to confront a witness, to a fair trial and to due process of law. (Ex. F). The state appellate court affirmed petitioner's lewd battery conviction and sentence without written opinion. (Ex. H).**

**The record establishes the following. The charge was that petitioner had sexual intercourse with the victim, who at the time was 14 years of age or younger, during the month of October, 2001. Consent was not a defense.**

**During opening statements, the State argued to the jury that they would hear evidence that during October of 2001 petitioner struck up a friendship with a 14-year-old girl, the victim in this case. (Ex. A-II, p. 65). Shortly after their first meeting, the two engaged in sexual intercourse on two different occasions. Petitioner later admitted to law enforcement that he had sexual intercourse with the victim, and testified at his probation revocation hearing that he had sex with the victim. (*Id.*, pp. 67-68).**

**Defense counsel then presented his opening statement, arguing as follows:**

> **MR. KYPREOS [Defense counsel]: Good morning.**
>
> **We anticipate that you will hear testimony that the young girl in question at some point in time told law enforcement that she did not have sexual intercourse of any kind with the defendant and that she in fact had sex with a --**
>
> **MS. PATTERSON [Prosecutor]: Objection, Your Honor.**
>
> **MR. KYPREOS: -- young white male.**

**THE COURT: All right. Sustained.**

**MR KYPREOS: Can we approach?**

**THE COURT: Yes.**

**(At the bench:**

**MS. PATTERSON: This is unbelievable.**

**MR. KYPREOS: It's not unbelievable. Whether or not my client committed this crime is at issue. This girl has given a statement before denying having any sex with the defendant.**

**THE COURT: It doesn't matter. The rape shield law prevents the admission of any other contact.**

**MR. KYPREOS: My point is, this is impeachment.**

**THE COURT: Impeachment on a collateral matter.**

**MR. KYPREOS: May I finish the point, Judge?**

**THE COURT: Uh-huh.**

**MY KYPREOS: Judge, my point is she's going to -- there's evidence, and we can present evidence through Deputy Melaven, as you know from the suppression hearing, that this girl denied having any sex. Now, if she comes in today and says she had sex --**

**THE COURT: Doesn't matter. Doesn't matter.**

**MY KYPREOS: -- that is an inconsistent statement.**

**MS. PATTERSON: He could have gotten in she denied having sex with him period. He didn't have to go into that, which is statutorily prohibited.**

**. . . .**

**MR. KYPREOS: We're not attacking her character. We're not trying to say --**

**THE COURT: It can't come in the back door, prior inconsistent statement.**

> **MR. KYPREOS: Let me get clear on this. Will you agree I can at least bring out -- if you're saying the other statute says about having sex with somebody else, can we at least bring out she denied having sex with the defendant? Would you agree with that?**
>
> **THE COURT: Yeah, all right.**

**(Ex. A-II, pp. 69-71). Defense counsel never made any specific argument as to his reasons for seeking to admit statements about other sexual partners.**

**The court then gave a curative instruction, advising the jury that state law provided that specific instances of prior consensual sexual activity between the victim and any person other than the offender shall not be admitted into evidence,[2] and asking them to disregard defense counsel's final statement concerning the victim's prior consensual activity with another person.**

**During the presentation of evidence, the State called the victim as a witness. She testified that she was born on July 8, 1987. (*Id.*, p. 80). She met petitioner in October of 2001. (*Id.*, p. 81). After their initial meeting they talked on the telephone and then planned a meeting. During their second meeting they went to petitioner's friend's house and had sexual intercourse. (*Id.*, pp. 83-84). They later met a third time during the month of October, during which they had sexual intercourse again. (*Id.*, pp. 85-86). The victim was fourteen years old when she had sexual intercourse with petitioner. (*Id.*). Defense counsel cross-examined the victim, eliciting her prior inconsistent statement that she had not had sex with petitioner. (*Id.*, pp. 90, 92).**

**The State presented additional evidence, including petitioner's testimony at his probation revocation hearing that he had sex with the victim, his admissions to at least two law enforcement officers that he had sex with the victim, and his signed**

---

**[2]Florida's rape shield statute provides, in pertinent part:**

> **Specific instances of prior consensual sexual activity between the victim and any person other than the offender shall not be admitted into evidence in a prosecution under s. 794.011. However, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence may prove that the defendant was not the source of the semen, pregnancy, injury, or disease; or, when consent by the victim is at issue. . . .**

**Fla. Stat. § 794.022(2) (2001).**

**and sworn written statement that he had sex with the victim. (*Id.*, pp. 3, 95, 110, 113, 118).**

**Petitioner claims that the trial court violated his Confrontation Clause rights by excluding evidence proffered for impeachment. This contention suffers from one fundamental flaw: the proffered testimony (that the victim previously stated that she had sex with another man) was irrelevant for that purpose because it would have neither contradicted nor impeached anything the victim said while on the witness stand, or, for that matter, anything presented in the State's case.[3] The record is utterly devoid of any assertion or evidence that the victim did not have sex with anyone else during the relevant time period. Moreover, it was not necessary to show the victim's bias or motive to fabricate. As the Eleventh Circuit explained in denying a similar claim, "the Sixth Amendment only protects cross-examination that is relevant." *Jones v. Goodwin*, 982 F.2d 464, 469 (11th Cir. 1993) (quotation marks and citation omitted). In *Jones*, the petitioner had been convicted of rape in state court. The Eleventh Circuit affirmed the denial of habeas relief on a claim that the trial court violated petitioner's right of confrontation when it excluded three boys' testimony regarding their sexual relations with the victim, and the examining physician's testimony that the victim's hymen was not intact prior to the rape, all of which were proffered for the purpose of impeaching the victim's out-of-court statement to the physician that she was a virgin before the rape. The court found that the proffered testimony was irrelevant for purposes of impeachment because it would not have contradicted or impeached anything presented in the state's case, including the victim's testimony. The jury never learned that the victim had told the doctor that she was a virgin prior to the rape.**

**Petitioner's Confrontation Clause challenge fails because his proffer was not relevant as impeachment evidence. *See also Delaware v. Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (trial court retains wide latitude under the Confrontation Clause to limit marginally relevant testimony); *Francis v. Dugger*, 908 F.2d 696, 702**

---

**[3]There was no evidence to the effect that the victim had not had sex with anyone else during the relevant time period. Furthermore, no medical evidence was introduced. Therefore, evidence of other sexual activity was not necessary to show that petitioner was not the source of semen or any injury.**

**(11th Cir. 1990) (same); *Capps v. Collins*, 900 F.2d 58, 60-61 (5th Cir. 1990) (there is "no constitutional right to present irrelevant evidence"); *Clark v. Dugger*, 834 F.2d 1561, 1565 & n. 8 (11th Cir. 1987) (habeas relief not warranted because excluded cross-examination was irrelevant); *Haber v. Wainwright*, 756 F.2d 1520, 1522-23 (11th Cir. 1985) ("The information sought to be elicited must be relevant" (quoting *United States v. Kopituk*, 690 F.2d 1289, 1337 (11th Cir. 1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983))). The state court's conclusion that petitioner was not deprived of his right of cross-examination, confrontation and impeachment was neither contrary to, nor an unreasonable application of, clearly established Federal law.**

**Petitioner further claims that the trial court's exclusion of the victim's statement that she had sex with another person contravened his due process right to present a defense, arguing as follows:**

> **The verdict makes it clear the jury believed that [the victim] had sex with someone. Petitioner was deprived of a credible defense when the court allowed him only to bring in evidence that [the victim] had denied having sex with him, but did not allow the jury to hear that she had had sex with someone else, 16-year-old David. Without being able to tell the jury not only that [the victim] had denied having sex with petitioner, but that she had sex with someone else, the trial court denied petitioner his due process right to present a defense.**

**(Doc. 25, p. 9; *see also* doc. 13, ex. F, pp. 12-13). In other words, petitioner argues that the trial court improperly excluded exculpatory evidence. (Ex. F, p. 19 ("[T]he court's ruling excluding part of [the victim's] statement frustrated Stallworth's efforts to develop an exculpatory defense.")).**

**The state court excluded the proffered evidence as irrelevant and as prohibited under Florida's rape shield law. "It is fundamental that federal courts possess only limited authority to consider state evidentiary rulings in a habeas proceeding by a state prisoner." *Phillips v. Wainwright*, 624 F.2d 585, 588 (5th Cir. 1980) (quotation marks and citations omitted).[4] Federal habeas relief shall be**

---

**[4]Pursuant to *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981), the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding as precedent on all federal courts within the Eleventh Circuit.**

**granted on a state evidentiary ruling only if the ruling was error, and effectively denied the petitioner a fundamentally fair trial. *Dickson v. Wainwright*, 683 F.2d 348, 350 (11th Cir. 1982). "Fundamental fairness is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984) (quotation marks and citations omitted).**

**In this case, the record simply fails to demonstrate that whether or not the victim had sex with another person was relevant to any issue, including any viable defense.[5] *See, e.g., Marr v. State*, 494 So.2d 1139, 1142 (Fla. 1996) ("A victim's prior sexual activity with one other than the accused is simply irrelevant for determining the guilt of the accused. The only time the victim's prior sexual activity with a third person is relevant is when such evidence may show the accused was not the perpetrator of the crime or if the defense is consent by the victim."). Because the proffered evidence was not material, its exclusion did violate petitioner's due process rights to present a full and fair defense. Petitioner is not entitled to federal habeas relief on this ground.**

**Ground 2. <u>Ineffective assistance of counsel - failure to object to the imposition of consecutive, instead of concurrent, sentences on the drug convictions.</u>**

**Petitioner describes the facts supporting this ground as follows:**

> **Where Petitioner was sentenced to consecutive sentences that derived from one single criminal episode, the original and subsequently "reimposed" sentence is in violation of the protection against double jeopardy. Petitioner's counsel was ineffective for failing to**

---

**[5]The defense of consent was not available in this statutory rape case. Petitioner had hoped to present the defense that the victim had represented to him that she was eighteen years of age or older. However, Florida law precluded such a defense. (Florida Statute Section 800.04(3) provided that the perpetrator's ignorance of the victim's age, the victim's misrepresentation of her age, or the perpetrator's bona fide belief of the victim's age could not be raised as a defense.) Prior to trial, the defense filed a "Motion in Limine as to Affirmative Defense," arguing that the prohibition in Fla. Stat. § 800.04 against such a defense was unconstitutional as a "substantive due process violation" because it "criminalized conduct where no criminal mens rea exists." (Ex. A-I, p. 74; Ex. A-II, pp. 3-6). The motion was denied. (Ex. A-II, p. 6). Misidentification was not a viable defense due to petitioner's admissions. In light of the foregoing, petitioner did not present an affirmative defense at trial. His position was that the State failed to meet its burden of proving beyond a reasonable doubt that he had sexual intercourse with the victim. (Ex. A-II, pp. 73, 131-35, 143-47).**

> **contemporaneous[ly] object to their imposition and/or advise Petitioner of the ramifications of a waiver.**

**(Doc. 1, p. 4). Petitioner asserts that he exhausted this ground by raising it in his Rule 3.800(a) motion and in one or both of his Rule 3.850 motions. Respondent contends petitioner exhausted his state court remedies only concerning the aspect of his claim that his consecutive sentences were illegal because they derived from a single criminal episode. The ineffective assistance aspect of petitioner's claim was dismissed as successive, and is procedurally defaulted. (Doc. 13, p. 17). The court liberally construes the petition as raising both a double jeopardy and an ineffective assistance claim.**

**i. Double jeopardy violation.**

**A. Clearly Established Federal Law -- Whether Collateral Attack on Double Jeopardy Grounds is Barred by Plea**

**It is well-settled that a voluntary and intelligent guilty plea generally forecloses federal collateral review of allegations of antecedent constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (holding that state prisoner's guilty plea foreclosed challenge to racial discrimination in grand jury selection). The United States Supreme Court explained the rationale underlying this rule in *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), reasoning that a voluntary and intelligent guilty plea, by establishing a reliable admission of factual guilt, "removes the issue of factual guilt from the case" and, therefore, "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction." 423 U.S. at 63 n. 2, 96 S.Ct. 241. Accordingly, once judgment on a plea is final, collateral inquiry for constitutional claims that occurred prior to the entry of the guilty plea is generally limited to whether the plea itself was knowing and voluntary.**

**Yet, this rule barring collateral attack on guilty pleas is not absolute. For example, the principal exception to this rule, established in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and reaffirmed in *Menna v. New York*, *supra*, is that a guilty plea does not bar a constitutional claim that "goes to the very power of the State to bring the defendant into court to answer the charge brought**

**against him." *Blackledge*, 417 U.S. at 29, 94 S.Ct. 2098 (holding prosecutorial vindictiveness claim not barred by guilty plea). Put differently, a guilty plea does not foreclose from federal collateral review those constitutional claims that involve the "right not to be haled into court at all." *Id.*; *Menna*, 423 U.S. at 62-63, 96 S.Ct. 241 (holding double jeopardy claim not barred by guilty plea). Consistent with this rationale, the *Blackledge/Menna* exception applies only to constitutional claims that are *clear on the face of the indictment and the existing record. See United States v. Broce*, 488 U.S. 563, 576, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (rejecting double jeopardy claim that required proof of additional factual evidence beyond face of indictment). Thus, even claims that go to the power of the government to hale the defendant into court, if they require proof of additional factual evidence, may not be raised on federal habeas because they have been "foreclosed by the admissions inherent in [a petitioner's guilty plea[ ]." *See Broce*, 488 U.S. at 576, 109 S.Ct. 757.**

### B. Federal Review of State Court Decision

**In his Rule 3.800(a) motion, petitioner claimed that the court's imposition of consecutive sentences was illegal because the drug offenses arose out of the same criminal episode. As relief, he sought re-sentencing to concurrent sentences. (Ex. B, pp. 1-3). He argued that his claim was properly brought under Rule 3.800(a) because he alleged that it could be determined from the face of the record (the charging information and the arrest report) that the sentences were illegal. In support of his motion, petitioner relied on *Johnson v. State*, 809 So.2d 892 (Fla. Dist. Ct. App. 2002). In *Johnson*, a defendant brought a Rule 3.800(a) motion claiming that his consecutive sentences, imposed under Florida's Prison Releasee Reoffender Act, for two burglaries and a grand theft were illegal because the charges arose out of the same incident. *Id.* Johnson based his challenge on a Florida case, *Hale v. State*, 630 So.2d 521 (Fla. 1993), which prohibits imposition of consecutive enhancement sentences for offenses arising out of the same criminal episode. The trial court had denied Johnson's claim, stating that the charging information showed that the offenses occurred on different dates, and thus were separate criminal episodes. The district court of appeal found the trial court's order factually incorrect, because the charging information indicated that the two burglaries and the**

**one grand theft occurred on the same date. Finding that Johnson had made a facially sufficient claim under Rule 3.800(a) which was not refuted by the record, the appellate court reversed and remanded with instructions that "if it can be determined from the record that these crimes arose from a single criminal episode, then Johnson is entitled to be resentenced to concurrent terms on his burglary and grand theft convictions. If the crimes did not, in fact, arise from a single criminal episode or if a determination cannot be made from the record, then the trial court may summarily deny the motion with appropriate attachments."** ***Id.***

**Upon review of petitioner's Rule 3.800(a) motion, the state court in this case denied relief, concluding first, that petitioner was attacking his conviction, not sentence; therefore his challenge must be brought under a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Ex. B, p. 6). In support of this position, the court relied on *Gandy v. State*, 560 So.2d 1363 (Fla. Dist. Ct. App. 1990). In *Gandy*, the defendant filed a motion to correct certain illegal sentences arising from a single criminal episode. The appellate court affirmed the denial of Rule 3.800(a) relief, but addressed an additional argument Gandy had asserted. Gandy had also attacked his multiple <u>convictions</u> on double jeopardy grounds, relying on *Carawan v. State*, 515 So.2d 161 (Fla. 1987).[6] The appellate court held that double jeopardy arguments raised under *Carawan* were really challenges to convictions, not sentences, and thus were not cognizable under Rule 3.800, but rather must be pursued via Rule 3.850. Because Gandy was time-barred from filing a Rule 3.850 motion, the appellate court determined that the Rule 3.800(a) motion asserting the double jeopardy challenge was properly denied. *Gandy*, 560 So.2d at 1363.**

---

**[6]*Carawan* was a direct appeal in which the defendant challenged on double jeopardy grounds his attempted manslaughter and aggravated battery convictions. He argued that the record did not establish beyond a reasonable doubt that the victim was struck by more than a single shotgun blast, and that he therefore could not be convicted of both attempted manslaughter and aggravated battery. Alternatively, Carawan argued that even if the victim was struck by two shots, they were fired in such a rapid succession that the two shots were indistinguishable, occurring in the same temporal and spatial relationship with each other, thus causing only a single criminal offense for which the legislature did not intend dual convictions. The Florida Supreme Court agreed, and remanded the case "for vacating of either the attempted manslaughter or aggravated battery conviction."** ***Carawan*,** **515 So.2d at 171.**

**The trial court in this case went on to state that although petitioner's motion failed to comport with the majority of the requirements found in Rule 3.850(c), it would "address the claim on the merits." (Ex. B, p. 6). The discussion that followed, and the state court's ultimate conclusion, was that petitioner could not attack his no contest plea on double jeopardy grounds because he waived that claim. The court explained:**

> **The general rule is that a plea of guilty precludes a later double jeopardy attack on the conviction and sentence. An exception occurs when (1) the plea is a general plea, distinguished from a plea bargain; (2) the double jeopardy violation is apparent from the record; *and* (3) there is nothing in the record to indicate a waiver of the double jeopardy violation. *Harris v. State*, 641 So.2d 126 (Fla. 1st DCA 1994). In the instant case, the Defendant waived any future double jeopardy claims during the April 29, 1998, sentencing hearing. Even though the plea was a general plea, the Defendant successfully bargained with the Court and received a downward departure. His promises to the Court in order to receive his "second chance" sentence of one year community control followed by four years probation (instead of 30 year maximum sentence he faced as listed in the information before the Court at that time) acted as a waiver to his later attacking the conviction on double jeopardy grounds.**

**(Ex. B, pp. 6-7) (footnote omitted).[7] To demonstrate petitioner's waiver, the state court attached a copy of the sentencing transcript.**

**As a preliminary matter, the undersigned finds that the state court misconstrued the claim petitioner asserted in his Rule 3.800(a) motion. Petitioner did not attack his convictions or sentences on double jeopardy grounds. Rather, he argued that the consecutive sentences were illegal under state law because the offenses arose out of the same criminal episode. *See, e.g., Torbert v. State*, 832 So.2d 203 (Fla. Dist. Ct. App. 2002) (distinguishing a *Hale* claim, which challenges only the consecutive nature of the sentences, from a double jeopardy claim). As relief, he did not seek to withdraw his plea or vacate either conviction. Rather, he merely sought re-sentencing to concurrent sentences. The state court did not address this claim and, to the extent petitioner raises it in this federal habeas**

---

**[7]*Harris* relied on a Florida Supreme Court case, *Novaton v. State*, 634 So.2d 607 (Fla. 1994) which, in turn, relied on *United States v. Broce, supra.***

**petition, the court will not address it because it is exclusively an issue of state sentencing law and not one of constitutional dimension.[8]**

**However, there is no doubt (or dispute) that the state court read petitioner's Rule 3.800(a) motion as presenting a double jeopardy challenge on the grounds that he was twice punished for the same offense.[9] That is the same claim he raises in his federal habeas petition. (Doc. 1, p. 4; doc. 25, pp. 30-32; doc. 13, p. 18). The state court squarely considered the application of the *Harris/Tollett/Broce* rule and concluded that petitioner's no contest plea precluded a double jeopardy attack because his promises to the sentencing court amounted to a plea bargain with the**

---

**[8]The sentencing error raised in this claim is based purely on state law--the interpretation of state sentencing procedures and case law. Federal habeas relief is available to correct only constitutional injury. 28 U. S. C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508 (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).**

**State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 352, 110 S.Ct. 668. For the reasons outlined by the State in its answer brief on petitioner's direct appeal of his VOP judgment, the undersigned concludes that the instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent. *See* Ex. D, pp. 3-10. Furthermore, it appears *Hale* and *Johnson* are distinguishable because they involved enhanced sentences. Petitioner's sentences on the drug offenses were not enhanced.**

**[9]As discussed later, the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 307-08, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Only the "multiple punishments for the same offense" double jeopardy claim could have been asserted in this case because this case involved only one prosecution. *United States v. Kaiser*, 893 F.2d 1300, 1304 (11th Cir. 1990).**

**State. Therefore, because the state court adjudicated petitioner's double jeopardy claim on the merits, § 2254(d)'s deferential standard of review must be applied.[10]**

**The state court's <u>factual</u> findings are presumed correct, and they are supported by the record. At the sentencing hearing, petitioner requested that the court give him another chance. The court was dubious, and asked petitioner whether "another chance" constituted another chance to "go out and break the law again or what?" (Ex. B, p. 9). The sentencing judge expressed his skepticism that petitioner could go as long as six months without violating the law. (*Id.*, p. 10). The judge then asked petitioner what he (the judge) could do if petitioner came back in front of him, and after petitioner indicated that there was no chance of that, petitioner finally stated that the judge could lock him up "for the rest of [his] life." To this, the judge replied, "Well, that's pretty close to what's going to happen." (*Id.*, p. 11). The court then asked petitioner whether he wished a second chance, and petitioner indicated, "Yes, sir. I'm begging." (*Id.*, p. 12). The judge replied, "All right. I'll do it because I know you will be back in another five or six months, and then I can load the wagon up on you good, a lot better than what I was going to do this time. But you're going to prove me wrong, right?" (*Id.*). He then imposed a sentence of thirty years (two consecutive fifteen-year sentences) and suspended the execution and service of this sentence and placed petitioner on consecutive terms of one year community control followed by four years probation. (*Id.*, p. 13).**

**The question is whether, even under these facts, the state court's legal conclusion that petitioner waived a double jeopardy challenge was contrary to, or an objectively unreasonable application of, clearly established Federal law. *Menna* is of considerable interest here. In that case, the defendant, having been granted**

---

**[10]By construing the term "claim" in § 2254(d) to mean only substantive merits claims, it could be argued that § 2254(d)'s deferential standard of review applies only when a state court adjudicates the substantive merits of a petitioner's underlying claim, and not where, as here, the state court rejects a claim by application of a constitutional procedural rule. *See* 28 U.S.C. § 2254(d) (an application for writ of habeas corpus is reviewed under § 2254(d)'s deferential standard "with respect to any <u>claim</u> that was adjudicated on the merits in state court") (emphasis added). Yet, Congress did not explicitly limit § 2254(d)'s deferential review of state court rulings on matters of federal law to substantive merits claims, but rather required deferential review of all claims "adjudicated on the merits." In this case, it is plain that the state court considered and decided the merits of whether the *Harris/Tollett/Broce* rule barred petitioner's claims and thus this merits decision is reviewed here pursuant to § 2254(d)(1)'s deferential standard.**

**immunity, refused to testify and was sentenced for contempt of court. *Id.* 423 U.S. at 61, 96 S.Ct. 241. After his release, the state indicted him for once again refusing to answer the same questions. *Id.* He pleaded guilty to this criminal charge but then appealed his conviction on double jeopardy grounds. *Id.* at 61-62, 96 S.Ct. 241. The state courts ruled that his guilty plea waived his right to assert a double jeopardy claim. *Id.* at 62, 96 S.Ct. 241. The Supreme Court reversed, holding that a guilty plea does not bar a defendant from contending "that the State may not convict [him] no matter how validly his factual guilt is established." *Id.***

**Here, there is no dispute that petitioner successfully argued to the sentencing judge that he should be given a "second chance." However, the undersigned fails to see how the "promises" he made in order to receive that second chance could remotely be construed under Federal law as waiving a double jeopardy challenge that was alleged to be apparent from the charging information. Waiver requires an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Further, petitioner's exchange with the sentencing judge did not suffice to make irrelevant his double jeopardy claim. *See Menna*, 423 U.S. at 61, 96 S.Ct. 241. Moreover, petitioner is not relying on additional factual evidence to support his claim - only on the charging document. In summary, here as in *Menna*, the petitioner's challenge implicates the legitimacy *ab initio* of the charging information. It was an unreasonable application of *Menna* to conclude that petitioner's double jeopardy claim was waived by his no contest plea and arguments at sentencing. *See, e.g., Slavek v. Hinkle*, 359 F.Supp.2d 473, 494 (E.D. Va. 2005) (dicta) (noting that habeas petitioner did not forfeit double jeopardy claim by entry of his guilty plea because it was a double jeopardy claim raised on the face of the indictment) (citing *Menna*)). Nonetheless, considering petitioner's double jeopardy claim *de novo*, the undersigned concludes that a double jeopardy violation is not apparent on the face of the charging information.**

**"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984) (quoting U.S. Const. amend. V, cl. 2.). This guarantee is**

**applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices*, 466 U.S. at 307-08, 104 S.Ct. at 1812 (citation and footnote omitted); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In the context of multiple punishments for the same offense, the double jeopardy bar applies if the two offenses for which the defendant is punished or tried cannot survive the "same-elements" or "*Blockburger*" test. *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856. Although this court will decide under federal law whether a double jeopardy violation has occurred, it must accept Florida courts' interpretation of that State's own statutes. *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir. 1988) (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.ct. 673, 679, 74 L.Ed.2d 535 (1983)).**

**Here, petitioner pleaded no contest to a 2-count information. The offense charged in Count 1 involved the sale, manufacture or delivery of cocaine in violation of Fla. Stat. § 893.13(1)(a). The offense charged in Count 2 involved the possession with intent to sell, manufacture, or deliver cocaine in violation of the same statute. (Ex. L, p. 19). Both offenses were alleged to have occurred on November 23, 1997. Florida courts have interpreted the offense of sale or delivery of cocaine and that of the possession with intent to sell or deliver cocaine as each requiring proof of an element not required for proof of the other. Sale or delivery does not require possession as an element. Possession does not require sale or delivery as an element. While a seller might in the ordinary case also possess the controlled substance sold, possession is not an essential aspect of the sale or delivery. *State v. McCloud*, 577 So.2d 939 (Fla. 1991) (holding that possession count was not a**

**lesser-included offense of the crime of sale; there are situations in which a sale can occur without possession and thus possession is not an essential element of sale) (citing Fla. Stat. § 775.021(4)(b)(Supp. 1988);[11] *Seward v. State*, 937 So.2d 767 (Fla. Dist. Ct. App. 2006) (holding that convictions for sale of cocaine and possession of cocaine with intent to sell or deliver did not violate prohibition against double jeopardy); *McMullen v. State*, 876 So.2d 589 (Fla. Dist. Ct. App. 2004) (same); *State v. Bush*, 588 So.2d 323 (Fla. Dist. Ct. App. 1991) (holding that sale and possession of cocaine were separate crimes even though they arose from the same events).**

**Contrary to petitioners' claim, a double jeopardy violation is not apparent from the face of the charging information. Thus, he is not entitled to federal habeas relief on this ground.**

**ii. Ineffective assistance of counsel.**

**The second aspect of petitioner's claim is that counsel was ineffective when he failed to object to the trial court's imposition of consecutive, as opposed to concurrent, sentences. Respondent contends this aspect of Ground 2 is procedurally defaulted. The undersigned agrees.**

**It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[12] thereby giving the State the "'opportunity to pass upon and correct'**

---

**[11]Section 775.021(4)(b)(1997) permits dual convictions and sentences for offenses based on one act, subject to certain enumerated exceptions. The statute provides in pertinent part:**

> **(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:**
>
> **1. Offenses which require identical elements of proof.**
>
> **2. Offenses which are degrees of the same offense as provided by statute.**
>
> **3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.**

**[12]Section 2254 provides, in pertinent part:**

> **(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–**

**alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.**

**An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.**

---

**(A) the applicant has exhausted the remedies available in the courts of the State; or**

**(B) (i) there is an absence of available State corrective process; or**

**(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.**

**. . . .**

**(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.**

***Bailey***, **172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed,* 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).**

**To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:**

> **a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.**

***Id.***

**Petitioner raised this ground of ineffective assistance in his second Rule 3.850 motion. (Ex. L, pp. 4-5). The state court dismissed the motion with prejudice as successive and an abuse of procedure pursuant to Rule 3.850(f) of the Florida Rules of Criminal Procedure. (*Id.*, pp. 20-21). The appellate court affirmed the dismissal. (Ex. M).**

**The state court relied on the procedural bar as an independent basis for its decision. Further, the procedural bar was adequate to support the judgment. Florida courts consistently apply the rule that a second or successive post-conviction motion which asserts new and different grounds than a defendant's first motion is an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first post-conviction motion (a showing petitioner here did not make). Fla. R. Crim. P. 3.850(f); *see Spaziano v. State*, 545 So.2d 843, 844 (Fla.1989) (holding that second 3.850 motion must be summarily denied where first motion raised claim of ineffective assistance of counsel, second motion sought to raise additional grounds for that ineffectiveness, and second motion did not allege defendant was precluded from asserting the additional grounds in the first motion); *Christopher v. State*, 489 So.2d 22 (Fla. 1986) (holding that "where an initial motion for postconviction relief raises the claim of ineffective assistance of counsel, the trial court may summarily deny a successive motion which raises additional grounds for ineffective assistance of counsel); *Washington v. State*, 876 So.2d 1233, 1234 (Fla. Dist. Ct. App. 2004) (petition for habeas corpus properly denied as successive 3.850 motion and thus abuse of process where defendant previously filed 3.850 motion asserting several grounds of ineffective assistance of counsel and either re-stated same issues in habeas petition or asserted grounds which could or should have been addressed in previous 3.850 motion). Therefore, this claim is considered procedurally defaulted.**

**This court may review petitioner's procedurally defaulted claim only if he can show cause for the default and prejudice attributable thereto, or that a fundamental miscarriage of justice will result if this court fails to consider the claim. *See Crawford v. Head,* 311 F.3d 1288, 1327 (11th Cir. 2002) (citing *Harris,* 489 U.S. at 262). Petitioner has made none of these showings. *See also* discussion *infra* Ground 6.**

**Therefore, this ground of ineffective assistance is procedurally barred from review by this court.**

**Ground 3. <u>Ineffective assistance of counsel - failure to preserve for appellate review the constitutionality of the trial court's "arbitrary and capricious" denial of petitioner's motion to suppress in the lewd battery trial.</u>**

**This claim involves counsel's attempt to suppress petitioner's statements to law enforcement. Petitioner contends that although counsel filed and argued a motion to suppress, (*see* ex. A-I, pp. 5-6, 9-71), he failed to preserve the issue for appeal. (Doc. 1, p. 5). Petitioner asserts that he raised this claim in his Rule 3.850 motion. (*Id.*).**

**A. Clearly Established Federal Law**

**In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).**

**"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:**

> **We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v.***

> ***Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness. *Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.**

***Chandler* at 1314 n.15.**

**In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.**

**Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).**

### B. Federal Review of State Court Decision

**In his first Rule 3.850 motion, petitioner claimed counsel was ineffective for failing to preserve for appellate review the admission of his out-of-court statements to law enforcement. He maintained that counsel erred when he: (1) "failed to object" when the trial court denied his motion to suppress, (2) failed to renew the motion to suppress, and (3) failed to object when the statements were introduced into evidence. (Ex. J, pp. 10-12). Applying *Strickland*, the state court denied relief, concluding: "[I]t is not ineffective assistance to fail to object to the admission of**

**evidence at trial that was previously the subject of a properly denied pre-trial motion to suppress." (*Id.*, p. 24) (citing *Rodriguez v. State*, 554 So.2d 16 (Fla. Dist. Ct. App. 1989)).[13] In other words, the state court concluded that counsel's failure to assert a meritless objection was neither unreasonable nor prejudicial under the *Strickland* standard. This decision was neither contrary to, nor an unreasonable application of *Strickland*. Moreover, the record conclusively refutes petitioner's assertion that counsel failed to object to, or preserve the issue of, the admission of his out-of-court statements to law enforcement.**

**Prior to opening statements, defense counsel inquired as to the court's ruling on the motion to suppress. (Ex. A-II, p. 54).[14] The court denied the motion. (*Id.*). The jury was sworn and the court announced that opening statements would begin. Defense counsel interjected:**

> **MR. KYPREOS [defense counsel]: Judge, may we address one matter before we start?**
>
> **THE COURT: Yes. All right.**
>
> **(At the bench:**
>
> **MR KYPREOS: I didn't know if they're going to bring in his out-of-court statements in opening statements. I wanted to preserve the issue I raised earlier rather than to interrupt her argument.**
>
> **THE COURT: All right. The Court has previously ruled, the motion to suppress is denied, the Court finding that there was not a true custodial interrogation that required the invocation of Miranda warnings. And I think there are a number of cases. I won't recite any authority at this time.**
>
> **MR. KYPREOS: Thank you, Judge.**

---

**[13]In *Rodriguez*, the defendant claimed his trial counsel was ineffective when he failed to renew his objection to the introduction of evidence at trial which had previously been the subject of a denied motion to suppress. The court, applying *Strickland*, rejected the IAC claim on the grounds that "[t]he motion to suppress was correctly denied, and an objection at trial would have been properly overruled." *Rodriguez* at 17.**

**[14]The suppression hearing was held approximately eight weeks prior to trial. The trial court took the matter under advisement. No ruling had been made until defense counsel inquired.**

**(Ex. A-II, pp. 64-65). Later, upon the prosecution moving into evidence a copy of petitioner's written statement to law enforcement, defense counsel objected:**

> **Q. (By Ms. Patterson [prosecutor]) Show you what's been marked as State's Exhibit No. 1 for identification and ask you if you recognize that?**
>
> **A. [Deputy Sheriff Cheryl Melaven] Yes, it's a statement that Mr. Stallworth gave to me on November 1st.**
>
> **Q. Did you witness his signing that statement?**
>
> **A. Yes.**
>
> **. . . .**
>
> **MS. PATTERSON: Your Honor, at this time, I would like to move into evidence State's Exhibit No. 1.**
>
> **MR. KYPREOS: Just subject to our preserved objection.**
>
> **THE COURT: All right. It will be received over any previous objection noted.**
>
> **MR. KYPREOS: Judge, may I approach the bench just real quick on something?**
>
> **THE COURT: Yes.**
>
> **(At the bench:**
>
> **MR. KYPREOS: I just wanted a clear record. Before the State argued, I had preserved the issue and so I didn't object when Mr. James [a law enforcement officer who had earlier testified to petitioner's verbal statement to him] testified. I didn't want, by not making the point, making it look like I had waived it in any way. It was my understanding when James testified, it was still preserved.**
>
> **THE COURT: It is.**
>
> **MR. KYPREOS: Thank you, Judge.**

**(Ex. A-II, pp. 111-12).**

**In light of all of the foregoing, petitioner has not shown that he is entitled to federal habeas relief on this ground.[15]**

**Ground 4. <u>Ineffective assistance of counsel and denial of due process when petitioner was "precluded a full and fair review of his motion to suppress out of court statement that was lynch-pin of the State's case."</u>**

**Petitioner asserts that he raised this claim in his Rule 3.850 motion. (Doc. 1, p. 5). Respondent construes this claim as one that counsel was ineffective for failing to ensure that petitioner was provided a "full and fair review" of his motion to suppress. Respondent asserts that petitioner did not fairly present this claim to the state courts; therefore, it is procedurally defaulted. In his reply, petitioner clarifies that his claim is that counsel was ineffective "for failure to move for a continuance to allow for additional evidence to be presented prior to ruling on motion to suppress." Petitioner identifies this "additional evidence" as the DNA test results. Petitioner's claim, as clarified, is procedurally defaulted.**

---

[15]Before leaving this ground, the undersigned addresses an additional argument raised in petitioner's reply. Petitioner alleges that at the close of the hearing on his motion to suppress, the trial court stated that it was deferring ruling on the suppression issue because an objective review could not be made until the results of the DNA testing were rendered. However, on the first day of trial the court ruled on the motion to suppress despite the fact that the DNA results were still not available. Petitioner contends that counsel should have objected to the court ruling on the motion to suppress without the benefit of the test results, and that this resulted in him not receiving a full and fair hearing on his motion to suppress, or an "objective review" of the issue by the appellate court. (Doc. 25, pp. 35-37). Petitioner did not fairly present this sub-claim to the state courts in his Rule 3.850 motion, and thereby deprived the state court of the opportunity to address the issue. Petitioner would be precluded from now raising this sub-claim in another Rule 3.850 motion, as such motion would be subject to dismissal as successive, pursuant to Fla.R.Crim.P. 3.850(f). While there exists an exception within the rule if the movant shows justification for his failure to raise the asserted issue in the first motion, petitioner has not alleged cause for his failure to assert this sub-claim in his first post-conviction motion. *See* Rule 3.850(f); *Spaziano, supra*; *Christopher, supra*. Therefore, this sub-claim is procedurally defaulted. Petitioner has made none of the requisite showings to excuse the default. Furthermore, he has failed to show that he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar. *See* discussion *infra* Ground 6. Therefore, he is not entitled to federal review of this ground of ineffective assistance.

Even if this court reviewed the merits of this sub-claim, relief should be denied because the alleged facts upon which it is based are conclusively refuted by the record. The undersigned has carefully reviewed the transcript of the suppression hearing. At no time did the trial court state that it was deferring ruling on the issue until the DNA test results were complete. It simply took the suppression matter under advisement to review the case law the parties had submitted. (Ex. A-I, p. 70). Although the status of DNA testing was discussed in the context of the scheduled trial date, there was no connection between those results and the admissibility of petitioner's out-of-court statements to law enforcement.

In ground 4 of his Rule 3.850 motion, petitioner contended his trial counsel was ineffective for failing to seek a continuance of the trial until the DNA analysis was complete "so that any favorable results can be used by the defense during trial." (Ex. J, p. 13). He argued that this error deprived him of the ability to present substantive exculpatory evidence in his behalf, and that had the trial been continued he would have been able to use the test results to show that he was not the depositor of the sperm sample extracted from the victim. (*Id.*, p. 14). This claim is not the same as the one asserted in Ground 4 of the instant petition, which relates to the effect of the DNA analysis on the motion to suppress (i.e., counsel's failure to ensure that the court considered the DNA test results in ruling on his motion to suppress). As discussed in note 15, *supra*, this claim is procedurally defaulted and, in any event, patently without merit.

Ground 5. Denial of "six amend rights to fair trial" when trial court excluded exculpatory DNA test results from lewd battery trial.

Petitioner elaborates on this claim as follows:

> Petitioner was denied due process where disclosure of negative test results would have changed the outcome of Petitioner's trial where undisclosed forensic test results potentially exculpatory if shown to be from source other than Petitioner and was material since evidence against Petitioner was not overwhelming and test results could have created reasonable doubt.

(Doc. 1, p. 6). Petitioner states he raised this claim in his Rule 3.850 motion. Respondent maintains that petitioner properly exhausted this claim by presenting it in his first Rule 3.850 motion. (Doc. 13, p. 20 (citing Ex. J)).

The court construes this claim as one that counsel was ineffective when he failed to continue the trial in order to receive the results of the DNA test, which is the same claim petitioner raised in ground 4 of his first Rule 3.850 motion. (Ex. J, pp. 13-14).[16]

---

[16]To the extent petitioner attempts to assert a free-standing due process claim based on the trial court's failure to *sua sponte* continue the trial until after completion of DNA testing, such claim was never presented to the state courts. Petitioner did not raise this claim of trial court error in his direct appeal or in his motion for post-conviction relief. He would be precluded from now raising it in the state courts, as the state procedural rules do not provide for a second direct appeal, and a second Rule 3.850 motion would be subject to dismissal as a successive motion pursuant to Rule 3.850(f). Therefore, the due process claim is procedurally defaulted. Petitioner makes none of the

**A. Clearly Established Federal Law**

**The clearly established federal law with regard to ineffective assistance of counsel is set forth in Ground 3, *supra*.**

**B. Federal Review of State Court Decision**

**Applying *Strickland*, the state court denied relief, finding: "Even though trial counsel did argue at sentencing that the test came back negative, any error attributed to that omission at trial would be harmless in light of the Defendant's two separate confessions and the overwhelming weight of the evidence presented at trial." (Ex. J, p. 25) (footnotes omitted). The court further noted that petitioner "confessed a third time, under oath and in open court, during the suppression hearing." (*Id.*, n.4).**

**Essentially, the trial court found that even if counsel's failure to move for a continuance was deemed unreasonable, petitioner failed to meet *Strickland*'s prejudice prong because even assuming *arguendo* that the test results would have been admitted, there is no reasonable probability that the jury would have reached a different verdict given petitioner's several confessions to having had sex with the victim. This decision is neither contrary to, nor an objectively unreasonable application of, *Strickland*. In light of petitioner's sworn confessions, there is no reasonable probability that the jury would not have convicted him of statutory rape even if they knew that the victim had also had sex with another man. Petitioner is not entitled to federal habeas relief on this ground, and the writ should not issue.**

**Ground 6. Denial of due process when DNA test results were withheld from petitioner until after trial, "and as a result thereof resulted in a conviction of one who is actually innocent of the crime."**

**Petitioner elaborates on this claim as follows:**

> **There existed exculpatory scientific evidence i.e., DNA test results that were precluded from Petitioner until after trial. Had this exculpatory evidence been presented at trial no reasonably minded juror would have found Petitioner guilty beyond a reasonable doubt.**

---

**requisite showings to excuse his default. Therefore, he is not entitled to federal review of this due process claim based on trial court error.**

**(Doc. 1, p. 6). Petitioner asserts that he presented this claim to the state court, but does not indicate how and where it was raised. (*Id.*). Respondent construes this claim as one of actual innocence, and asserts that this claim was not properly exhausted because this is the first time petitioner has presented it to any court. (Doc. 13, p. 21). Further, petitioner fails to meet the *Schulp* standard to overcome his procedural default. (*Id.*, p. 22).**

**The undersigned construes petitioner's claim as a due process challenge arising under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).[17] Petitioner has not presented this claim to the state courts. He neither raised it in his direct appeal, nor asserted it in either of his motions for post-conviction relief. He would be precluded from now raising it in the state courts, as the state procedural rules do not provide for a second direct appeal, and another Rule 3.850 motion would be subject to dismissal as untimely and successive pursuant to Rule 3.850(b) and (f). Therefore, the claim is considered procedurally defaulted. Petitioner has not demonstrated cause to overcome the procedural default. *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.**

**Furthermore, petitioner has failed to show that he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar. As previously explained, to meet the *Schlup* standard the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327, 115 S.Ct. 85. In assessing the adequacy of the petitioner's showing, the district court "is not bound by the rules of admissibility that would govern at trial." *Id.* Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed**

---

**[17]In *Brady*, the Supreme Court wrote that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. The Court in *Bagley* held that evidence withheld by the government which might have been favorable to the defense in conducting cross-examination is "material," as would require reversal of a conviction, only "if there is a reasonable probability that, had the evidence been disclosed to defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375.**

**to have been wrongly excluded or to have become available only after the trial.'" *Schlup*, 513 U.S. at 328, 115 S.Ct. at 867 (emphasis added) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970)).**

**As previously explained, all that was required for conviction was proof beyond a reasonable doubt that petitioner had sexual intercourse with the fourteen-year-old victim. (Ex. A-II, p. 147). One searches the record in vain for any theory that the victim's sexual activity with another person is relevant to any issue in this case. It in no way implies that she did not have sexual intercourse with petitioner. Furthermore, given petitioner's admissions (two of which were under oath) that he had sex with the victim, he cannot show that it is more likely than not that no reasonable juror would have convicted him in light of the DNA evidence. Based on the foregoing, petitioner is not entitled to federal habeas review of his due process claim.**

## CONCLUSION

**A number of petitioner's grounds for relief are procedurally defaulted. Those claims that were properly exhausted do not warrant federal habeas relief.**

**Accordingly, it is respectfully RECOMMENDED:**

**That the petition for writ of habeas corpus (doc. 1) challenging the convictions and sentences in *State of Florida v. Kenneth Lawson Stallworth*, in the Circuit Court of Escambia County, Florida, case numbers 97-5264 and 01-5542, be DENIED and the clerk be directed to close the file.**

**At Pensacola, Florida this 10th day of April, 2007.**

/s/ Miles Davis

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**